THE GULF, COLORADO & SANTA FE RAILWAY COMPANY v.
ROBERT HEPNER.

No. 3174.

1.   **Opinion Testimony—Nonexperts.**— Opinions of witnesses may be given in evidence although they are not experts in the particular science about the matter of inquiry, if the witnesses give at the same time the facts upon which their opinions are based; but in order to render such evidence competent the facts must appear to be such as would enable them to arrive at an intelligent opinion with respect to the subject.

2.   **Same.**—Nonexperts were permitted to give their opinions as to the cause of the overflowing of plaintiff's land—testifying that it was caused by an embankment made by the defendant.   The witnesses were not shown to be familiar with the river, the rain falls, and previous overflows, and were possessed of very little information with respect to the width and fall of the river, and the facts with respect to the embankment that would make it the cause of the overflow.   The opinions should have been excluded.   See facts.

3.   **Measure of Damages for Overflowing Lands.**—In absence of testimony to injury to the surface of the land overflowed, or to the soil, it was error to admit testimony to value before and after the overflow, and to charge upon (supposed) permanent injury to the land.

4.   **Measure of Damages.**—In suit for damages for overflowing lands of plaintiff, special damages being alleged to crops and fruit trees, and there being no testimony to permanent injury, the court erred in refusing a charge restricting the damages to that from destruction and injury to crops and fruit trees.

5.   **Cross-Examination — Other Lands.**—A witness having testified for the plaintiff that immediately after the overflow the plaintiff's land was worthless, it was error to exclude an inquiry of the witness at what price he had sold adjoining lands, also overflowed, after the overflow.   This was admissible to test the weight and credibility of his testimony.

6.   **Irrelevant Testimony.**—It was incompetent and irrelevant to prove that after the overflow, and when the defendant railway company was repairing the embankment, the witness had warned the boss superintending the work that the bridge and trestle were not high enough, and that they would cause overflows, etc. This was calculated to prejudice the jury, and was error.

Appeal from Dallas.   Tried below before Hon. George N. Ald-redge.

This is an appeal from a judgment for $1000 damages for overflowing six acres of land about one mile west of Dallas, in 1885.

The opinion states the case.

*Leake, Shepard & Miller*, for appellant.—1. The statements of the witnesses were inadmissible, because they were mere guesses, without foundation in fact.   Neither witness was in possession of any information upon which an opinion could have been founded.   They were not experts, and did not pretend to base their opinions upon a statement of facts detailed by others.   Such guesses, given under the sanction of the court as testimony, were necessarily calculated to create a false impression upon the jury and to influence their verdict.   Railway v. Brousard, 69 Texas, 617, 622; Half, Weis & Co. v. Curtis, 68 Texas, 640, 643; Rogers on Expert Testimony, 7; Commonwealth v. Sturtevant, 117 Mass., 122, 137; Randall v. Gill, 77 Texas, 351, 354, 355; Railway v. Thompson, 75 Texas, 501; Bridge Co. v. Cartrett, 75 Texas, 629; Shelley v. City of Austin, 74 Texas, 608, 611, 613; Mining Co. v. Fraser, 130 U. S., 611, 620.

2. Whatever may be said of the instruction of the court as an abstract proposition of law, it had no application to the facts of this case, and necessarily misled the jury.   The true measure of damages is that stated in the special instruction asked by the appellant, namely, not the permanent depreciation in the value of the land, but the actual cash market value of the crops and fruit trees destroyed, as they stood in the field at the time of the overflow.   Because the evidence showed that defendant's embankment was washed out by the overflow, and afterward the openings in it were greatly increased and the bridge raised, and the ground has never been overflowed since.   Railway v. Helsley, 62 Texas, 593; Railway v. Tait, 63 Texas, 223; Railway v. Seymour, 63 Texas, 345; Railway v. Brousard, 69 Texas, 617; Railway v. Pool, 70 Texas, 713; Railway v. Johnson, 65 Texas, 389.

*Coombes & Gano*, for appellee.—1. The statements of the witnesses were admissible, since nonexpert witnesses who are acquainted with the surroundings may give their opinions as to the cause of an overflow of certain lands, and may express their opinion as to whether the outlets in an embankment are sufficient to permit the passage of the water.   Railway v. Klaus, 64 Texas, 294; Tompkins v. Toland, 46 Texas, 585; Porter v. Mfg. Co., 17 Conn., 249; Whart. on Ev., sec. 512, note 10.

2. The true measure of damages is the direct injury to the crops and land from each overflow as it occurs, save and except where the

obstruction which causes the injury is a permanent one; in which case damages for permanent injury may be recovered. Railway v. Helsley, 62 Texas, 593; Van Pelt v. City of Davenport, 42 Iowa, 314.

GARRETT, PRESIDING JUDGE, *Section B.* — Robert Hepner, as plaintiff, brought this suit in the District Court of Dallas County, May 4, 1886, against the Gulf, Colorado & Santa Fe Railway Company, as defendants, to recover damages for the overflow of a tract of six acres of land belonging to the plaintiff, situated in the Trinity River bottom about one mile west of the city of Dallas. He alleged that. the overflow was caused by an embankment made by the defendant across the bottom land of the river below plaintiff's tract, in the construction of its railway across the river, which embankment had insufficient outlets for the flow of the water; and in the spring of 1884 and 1885 caused the plaintiff's land to be overflowed, resulting in the destruction of his crops, fruit trees, etc., and in permanent injury to the value of the land.

The case was tried March 8, 1888, and resulted in a verdict and judgment for the plaintiff, from which the defendant has appealed.

Appellant complains of error in the court below in the admission of evidence; in the charge of the court as to the measure of damages, and the refusal of the court to give the special instruction requested by defendant as to the proper measure of damages; and that the verdict is contrary to the evidence as to the cause of the overflow.

Plaintiff's tract of land is about one mile west of the city of Dallas, across the Trinity River from the city, and is in the second bottom of the river as distinguished from the first or low bottom, which is about three-fourths of a mile wide, and is often overflowed by the water from the river; but plaintiff's land was not subject to overflow. Defendant constructed its railway across the river about three miles below plaintiff's tract of land, and in doing so built a high embankment across the bottom. During the overflow of 1885 a large portion of this embankment was washed away by the flood, and was rebuilt by the company with much larger openings for the passage of the water. There had been no overflow of the land since 1885 up to the time of the trial.

Witnesses for the plaintiff, A. P. Langston, F. Shubach, P. S. Browder, and himself were permitted to testify, over the objection of the defendant, that in their opinion the overflow of the land was caused by the embankment of defendant across Trinity River. This testimony was objected to, because the witnesses were not shown to be in possession of such facts with reference to the width of the river, the depth of the water, the flow therein, the height, length, and general character of the obstruction, and the number and size of the outlets for the water therein as would furnish sufficient foundation for their opinions.

Hepner showed that he had bought his land in 1883. He testified that he had never seen any overflow in the river before 1884, except from the east side, and only two on the west, those of 1884 and 1885; that he was pretty well acquainted with the location of the country between his land and the embankment on the east side of the river, but not on the west; had examined the embankment about two or three weeks before the trial and looked at the openings, and had been up and down the river occasionally. He had passed over the embankment once, either in 1882 or 1883, but had not been down to it since until just before the trial. The embankment was in his judgment about three-fourths of a mile long. He had never measured the height of the embankment, and did not measure the width of the bridge and trestle openings; did not know how wide the river was at the bank, nor across where his land was. He was not at the crossing during either overflow, and did not see the high-water mark on the bank or at the bridge.

Langston had never seen any overflow, or noticed the grounds on the west side until 1885, and had never seen one on the west side except the one of 1885; but had seen a good many overflows from the east. He made no investigation at the time of the overflow as to its cause, and did not examine defendant's embankment. He had never seen it but once, which was a considerable time afterward. Had been up and down the river bottom, and had known the river fourteen or fifteen years, but had been acquainted with the west side only about three years at the time of the trial. Supposed the embankment was about three-quarters of a mile in length; thought it stood solid on the west side of the river with the exception of one small opening about large enough for a wagon to pass through. Supposed that on the east side the company had left considerably more space than there was at the time of the overflow; the space was originally several hundred yards on that side. He did not know how far it was down to the bridge; did not examine high-water mark below the bridge; did not take into consideration the width of the bottom in estimating what caused the overflow; didn't know its width at the bridge; couldn't say how far a five-foot dam would back the water up stream; and didn't know what the fall was from his and plaintiff's lands down to the embankment. Mr. Weeks, an engineer, ran some levels and made some surveys, but witness did not go with him all the way; did not notice the high-water mark on the trees; had paid no attention to any old high-water marks.

Shuback said he was familiar with the general course of the river. He was not down on the river during the overflow, but stood on the Texas & Pacific Railway dump and looked at it. This was up the river from plaintiff's land.

Browder was never at the embankment until after the overflow. Supposed it was a mile in length, and could only guess at its height, which he supposed was between twenty and twenty-five feet. Was

pretty well acquainted with the country on the banks of the Trinity in the neighborhood of Dallas. His recollection was that the embankment came up to the river bank on each side. The trestle or opening there was about 250 yards long. There were probably other small openings—did not know exactly. Knew that there was a considerable dump there. Reckoned that the bridge was about 100 feet long. He didn't go down to see the water during the overflow, as he lived above the Texas Pacific bank and was cut off by it. He saw the height of the water all the way down, but had not examined any marks on the river below; didn't know the width of the bottom; couldn't state the length of the openings in the bank, nor what the fall of the river was.

Opinions of witnesses may be given in evidence although they are not experts in the particular science about the matter of inquiry, if the witnesses give at the same time the facts upon which their opinions are based; but in order to render such evidence competent the facts must appear to be such as would enable them to arrive at an intelligent opinion with respect to the subject. In the International & Great Northern Railway Company v. Klaus, 64 Texas, 293, which was an action for damages resulting from an overflow alleged to have been caused by the defective construction of a bridge over a stream, the plaintiff was permitted to prove by several witnesses, that in their opinion the opening of the bridge was not large enough to permit the passage of the drift. It was shown, however, that these witnesses had lived many years near the stream, and were familiar with the usual rainfall of the region. They stated, that after heavy rains torrents of water rushed down the channel bearing timber, trees, and drift in great quantities. Their opinions in connection with the facts testified to by them was held to be competent evidence. We do not think that the facts testified to by the witnesses whose opinions were objected to in this case were sufficient to make their opinions as to the cause of the overflow of any value. They were not shown to be familiar with the river, the rainfalls, and previous overflows; and were possessed of very little information with respect to the width and fall of the river and the facts with respect to the embankment that would make it the cause of the overflow. We think that the court erred in permitting these witnesses to testify as to their opinion of the cause of the overflow. The objection obtains also to the opinion of the witness Langston, that the outlets in defendant's embankment were not sufficient to carry off the water. Railway v. Brousard, 69 Texas, 622; Halff, Weiss & Co. v. Curtis, 68 Texas, 642; Bridge Co. v. Cartrett, 75 Texas, 629; Mining Co. v. Fraser, 130 U. S., 620.

The question as to the measure of damages is presented by the second, seventh, and eighth assignments of error. Plaintiff's witnesses were permitted to testify as to the value of the land in 1885, first without the overflow and without defendant's embankment, and then to

state what the value of the same was after the overflows of 1884 and 1885, and with the defendant's embankment across the Trinity River as it was reconstructed. This testimony was objected to, because it did not tend to prove the true measure of damages, and there was no testimony to show that the embankment after its reconstruction was an impediment to the flow of the water in the river to such an extent as under any circumstances to cause the overflow of plaintiff's land. And upon the measure of damages the court instructed the jury: "If you find that said embankment is a permanent one, and that it is so negligently constructed that it will cause the ordinary rises in the said river, which must certainly occur, to overflow plaintiff's land, and that thereby said land is permanently injured, then you will find for the plaintiff the damages he has sustained by reason of said permanent injury. If, upon the other hand, plaintiff's land is so situated that said embankment can only cause plaintiff's land to overflow during an extraordinary rise in said river, then the damages that may occur to plaintiff by reason of such extraordinary rise are merely speculative, and can not be recovered by plaintiff in this suit; for such damages defendant could only be made to respond after they have actually occurred."

This charge was objected to, and a special instruction was requested which limited the damages, if the jury should believe that the overflow was actually caused by the defendant's embankment, to "the actual cash market value of the crops and fruit trees destroyed as they stood in the field at the time of the overflow."

If the injury to the land was a permanent one, then the correct measure of damages would be the difference in the value of the land as it was immediately before the overflow and immediately after, provided the overflow was caused by the defendant's embankment. The witnesses were permitted to testify as to what the value was without the overflow and without the embankment, and then what it was after the overflow and with the embankment as it was reconstructed. But an examination of the testimony will show that there had been no overflow since 1885, and that appeared to have been a very destructive one. At that time a portion of the defendant's embankment was washed away and was afterward rebuilt. When it was rebuilt additional openings were left in the embankment, and it and the bridge were both raised. It does not at all appear from the evidence that the land was permanently injured, the only evidence to that effect being the opinion of some of the witnesses that the openings in the embankment as reconstructed were insufficient to let the water pass so as not to subject the land to overflow again. There was no evidence to warrant the admission of the testimony objected to as to the measure of damages for a permanent injury; nor to authorize the charge of the court which was excepted to, although the charge may have been

proper had there been evidence that the land was permanently injured. As there was no evidence of injury to the surface of the land or the soil, the special instruction requested by the defendant should have been given.

Although the presence of the defendant's embankment might have the tendency to render the plaintiff's land less valuable by reason of its supposed liability to overflow on account of the obstruction to the flow of the water, yet this should be reasonably certain before the plaintiff should be allowed to recover for a permanent injury to the land, because he would otherwise have a cause of action against the defendant for injury to crops and soil after each successive overflow.

When the witness Langston testified that the land was practically worthless after the overflows of 1884 and 1885, with the embankment of defendant as then constructed, it was proper in the cross-examination of the witness by the defendant to prove by him the price of four lots of his land which lay adjacent to the plaintiff's land, and sold by him in the year 1887, in order to test the weight and credibility of his testimony, although in a proper case the value of the land just after the overflow would have been the proper criterion, and it was error in the court to exclude the evidence. The court also erred in permitting the witness W. C. Young to testify, that he told the employes of defendant, while they were reconstructing the embankment and trestle after the overflow of 1885, that they were not putting them high enough, and that they would lose their bridge, and probably cause farms to be overflowed. This testimony was clearly irrelevant, and, as contended by appellant, it was calculated to create a prejudice in the minds of the jury against the defendant as careless and regardless of injury that might be done by its embankment.

Appellant's tenth assignment of error questions the sufficiency of the evidence to sustain the verdict; but in view of the fact that the case must be reversed for errors already pointed out, we will not pass on this assignment.

It is our opinion that the judgment of the court below should be reversed and the cause remanded, and we so report.

*Reversed and remanded.*