Fort Worth & Denver City Railway Co. v. F. M. Hyatt et ux.

No. 2115.

1. **Railway Company—Duty to Passengers—Failure to Keep Coaches Warmed.**

It is the duty .of a railway company to properly and comfortably warm its coaches for the welfare and comfort of its passengers, and it is liable for damages resulting from the failure to discharge this duty, without allegation and proof of a universal custom among railway companies to warm their coaches.

2. **Same—Evidence—Cause of Child's Death—Non-Expert Testimony.**

In an action against a railway company for negligently causing the death of an infant child, the mother, forty-six years of age, and experienced in raising and nursing children in sickness and health, is competent to testify that the cause of the child's death was a severe cold contracted while on a railway coach that was not warmed, she having been with the child in the coach and having nursed it continuously thereafter until it died.

3. **Same—Corroborative Evidence.**

So, as corroborating the evidence as to the cause of the child's death, other witnesses who were present in the coach at the time may testify that there was no fire in it, and to the extreme cold in the car, and that it was so severe that they also contracted a cold from the same cause, and were made sick thereby.

4. **Same—Damages for Death of Child—Measure of Damages.**

In an action of damages against a railway company for negligently causing the death of a child, the court instructed that the jury might include as an element of the damages "such pecuniary benefits as the child might confer on its parents after majority." Held, erroneous, as allowing the jury to find for all such pecuniary benefits as the parents might possibly have received, and not confining them to such as might reasonably have been expected under the circumstances.

Appeal from Armstrong. Tried below before Hon. H. H. Wallace.

*Stanley, Spoonts & Meek,* for appellant.—1. There is no statutory duty imposed on the appellant to keep its coaches warm, and no common law obligation rests upon it to do so; and before it can be held liable for injury resulting from a failure to keep its coach warm, it would have to be alleged and proved that it was a universal custom on the part of railroads to warm their coaches for the benefit of the traveling public, and the contract of transportation would have to be made with reference to such custom. Ray on Car., 230; Wood v. Railway, 10 S. E. Rep., 967.

2. A witness who is not a medical expert is not competent to testify as to the cause of the death of a person, and it was error to permit said witness to testify that said child died from exposure to cold on the night of February 15th, on defendant's train; because, first, the opinion of said witness was elicited about a matter on which she was not competent

to give an opinion; and second, because it was shown that she was not a person possessing any skill that would entitle her to express an opinion as an expert as to the cause of the death of said child. Railway v. Kuehn, 2 Texas Civ. App., 211; Gratton v. Ins. Co., 80 N. W. Rep., 287-301; Osborne v. Troupe, 23 Atl. Rep., 157; Walton v. K. C. Company, 40 App. (Ill.), 544; 67 Texas, 462; 81 Texas, 131; 2 Texas Civ. App., 172; 30 Texas, 288.

*A. W. Walker* and *Davis & Garnett,* for appellees.—1. A mother who has had much experience with infants and has been with them continually in sickness and in health, and who was with her infant when it was. taken sick and with it constantly during its illness and was present at its death, can testify as to the cause of death, especially where it does not appear that she is incompetent.

2. The measure of damages was the pecuniary benefit that the infant would have been to his parents, both before and after his majority, and the charge of the court was substantially correct. Railway v. Mechler,. 29 S. W. Rep., 202; Railway v. Sciacca, 80 Texas, 350; Brunswig v. White, 70 Texas, 504; Railway v. Lee, 70 Texas, 496.

HUNTER, ASSOCIATE JUSTICE.—It is contended by appellant company, that neither the common law nor any statute required it to warm its coaches in cold weather, and that plaintiffs should have plead and. proved a universal custom for railroad companies to warm their passenger coaches for the benefit of the public, in order to entitle them to recover.

The petition objected to stated that Mrs. Hyatt and her babe and children were required, by the conductor and agents in charge of the train, to ride from Clarendon to Amarillo in a coach provided with stoves for heating purposes, but with no fires therein; that the weather was extremely cold, and that the air in said coach was chilly and bitter cold,. and that Mrs. Hyatt frequently requested the conductor and agents in charge of the train to make fires in said stoves, but they failed and refused to do so, as it was their duty to do, and that by reason thereof her babe became chilled and almost frozen, and became dangerously and fatally ill, and in consequence thereof died.

This, we think, presents a good cause of action. It was the duty of defendant to properly and comfortably warm its coaches for the welfare and comfort of its passengers, and especially so when they were women and little children, and their discomfort was made known to the conductor or brakeman and fires requested. Hutchinson on Carriers, 2 ed.,. sec. 515d; Dillingham v. Hodges, 26 S. W. Rep., 86.

The judge's charge to the effect that it was the duty of defendant to use reasonable care and diligence to warm the coach, and unless it did. so it would be guilty of negligence, was not, therefore, erroneous, as against the defendant, nor a charge upon the weight of the evidence, and., the charge asked to the contrary was properly refused.

It is complained that the court erred in admitting the testimony of the mother of the child to the effect that she knew the cause of the child's death, and that it was caused by a severe cold contracted while on the coach of defendant between Clarendon and Amarillo, on the night of the 15th of February, 1892, and that she knew that it died from exposure to cold in the coach on the night and between the places named. The ground of objection urged to this evidence was that the witness was not shown to be a medical expert, and, therefore, could not testify as to the cause of the child's death, nor give her opinion thereon.

She testified that she was 46 years old, and was the mother of eleven children; that she started with this child on the morning of February 15; that it was a robust, healthy child, about three months old, and had never been sick, and she had never given it a dose of medicine. The coach was warm in which she traveled from Saginaw to Clarendon, and the baby was well when the conductor required her to go into the cold coach; that its feet and hands and face got very cold before they arrived at Amarillo, and it was almost frozen; that it was sneezing and coughing; that it was taken sick on this coach, and contracted a severe cold; that it continued to grow worse and worse all the time after that, until it died, although it had the best of care and attention, and was not subjected to exposure afterwards; that she and all her family contracted severe colds at the same time, and her health was impaired by reason thereof; that she had lost two other children by death. Other testimony in the record shows that she was with it all the time during its illness until its death, and nursed it and doctored it and watched over it; and Dr. Burger, who attended the child in its illness, states that its death was undoubtedly caused by exposure to cold or bad weather.

We think that the conclusion of the mother, taken along with her other testimony of facts showing that she had observed the course of the child's sickness and had been with it daily and hourly from the time it became ill until its death, and her experience in raising and nursing children in sickness and in health, was competent evidence in this case as tending to establish the cause of the death of the child. If a mother sees her healthy, robust child fall from a bridge and gathers it up in her arms, maimed and mangled and bruised, and nurses it and watches over it, and sees it grow weaker and weaker day after day and month after month, until death relieves it of its sufferings, she is as competent to testify as to what caused its death as any college bred expert in the land. She might not tell it in the learned way or use the technical terms of the doctor, but she would know that her child's death was caused by the fall, while the doctor might reason on the case and work up in his own mind very grave doubts as to whether the child died from septicaemia or neurasthenia, as he could show you that the symptoms of both diseases were present at the moment of dissolution, and he would probably never refer to the fall as having anything to do with its death.

Our views as to the admissibility of this evidence are sustained by our Supreme Court in the case of Schalf v. Collin County, 80 Texas, 514;

Railway v. Hepner, 83 Texas, 136; Railway v. Richards, 83 Texas, 203; and are not at all in conflict with the opinion in Brown v. Mitchell, 31 S. W. Rep., 621, nor Railway v. Wright, 1 Texas Civ. App., 402.

The evidence of other witnesses who were present in the coach at the time, and who testify that there was no fire in it, and to the extreme cold in the car, and that it was so severe that they also contracted a cold at the same time and by the same cause, and were made sick for a week by reason thereof, was properly admitted, as tending to show that the child's illness was caused by the same condition of things.

The court charged the jury "that the measure of damages would be a sum equal to the pecuniary benefits the parents had a reasonable expectation of receiving from the child, had it not died, up to its arrival to 21 years of age, and such further pecuniary benefits as it might confer on its parents after majority, and also the reasonable and necessary expenses incurred by the plaintiffs for care and medical attention for said infant during said illness, and in estimating such damages the age and character of the child may be considered, as well as the reasonable expenses of its rearing and education."

This charge is complained of upon two grounds: (1) that it allows the jury to find damages for "such pecuniary benefits as the child might confer on its parents after majority;" and (2) because it is indefinite and uncertain as to whether the jury should charge the expenses of rearing and educating the child to the railway company or give it credit therefor. The appellant's counsel properly requested the court to charge the jury that such expenses of rearing and education should be deducted from the sum of benefits expected to be received by the parents from the child, which was refused. We think the special charge should have been given, as it was definite, clear and correct; although, perhaps, the jury were not misled as to the meaning of the main charge, but understood that the expenses were not to be charged to the railway company, but deducted from the gross sum allowed plaintiffs.

The other objection to the charge is well taken, because the jury under this charge were allowed to find for all such pecuniary benefits as the parents might possibly have received from the child after its majority, and was not confined to such as might reasonably be expected under the circumstances.

In view of the fact that the judgment in this case must be reversed, on account of the error in the charge of the court as above stated, we deem it not improper to say that the closing appeal to the jury made by counsel for the plaintiffs, we think, in a case like this, was calculated to improperly arouse the sympathies of the jury, and might have caused a reversal of the judgment of itself, but we do not feel called upon to decide that question now.

For the error named, we reverse the judgment and remand this cause for a new trial.

*Reversed and remanded.*

Delivered February 8, 1896.