MISSOURI, KANSAS AND TEXAS RAILWAY CO. v. J. P. HOPSON.

Delivered December 12, 1896.

**1.  Railway Construction—Damages—Proof Must Accord With Pleading.**
    Where plaintiff sued for damages for the permanent depreciation in value of premises resulting from the construction of a railroad near by them, he was not entitled to recover damages caused by the occasional parking of cars in front of such premises.

**2.  Same—Release of Damages—Other Injury.**
    A release by the owner of the premises of all claims for damages thereto resulting from the construction of a railway in the street in front of them, will not debar him from recovering damages occasioned by a construction not necessary or proper for the operation of the railway as contemplated by the release.

APPEAL from Grayson.   Tried below before Hon. DON A. BLISS.

*Foster & Wilkinson,* for appellant.—The court erred in giving to the jury the sixth paragraph or instruction of his charge, because the same was, under the pleadings, proof and issues in this case, erroneous and misleading.   [See the opinion.]

The issue to which this charge applied was solely one as to whether plaintiff could recover for unlawful operation of the road by standing cars on these tracks, etc.   The measure of damages as given by the charge of the court was the difference in value of plaintiff's property before and after the unlawful acts.   Railway v. Haskell, 4 Texas Civ. App., 557; Clark v. Dyer, 81 Texas, 342; Railway v. Hepner, 83 Texas, 141; Railway v. Seymour, 63 Texas, 346; Railway v. Tait, 63 Texas, 226; Railway v. Anderson, 79 Texas, 427; Railway v. Bingham (Tenn.), 38 Am. and Eng. R. R. Cas., 450, 452; 11 S. W. Rep., 705; Harman v. Railway (Tenn.), 11 S. W. Rep., 703; Railway v. Heisel, 38 Mich., 62; 31 Am. Rep., 313; Railway v. Eberle, 110 Ind., 542; 32 Am. and Eng. R. R. Cas., 226; Uline v. Railway, 101 N. Y., 98; 23 Am. and Eng. R. R. Cas., 9, 22, and authorities there reviewed; Adams v. Railway, 18 Minn., 260; Blesch v. Railway, 43 Wis., 183; Scott v. Railway (Ind.), 10 Am. and Eng. R. R. Cas., 189; 1 Suth. on Damages, 199.

*Wolfe & Hare,* for appellee.—The sixth paragraph of the court's charge properly permitted the jury to determine whether it constructed the siding on Branch street for the purpose of parking cars, and whether the same was used for that purpose, and whether or not such use was an improper operation of the road, and whether or not the construction of said siding and the use for parking cars was a permanent damage to plaintiff's home-place on Branch street, and was not error.   Rosenthal v. Railway, 79 Texas, 325; Railway v. Grabill, 50 Ill., 241; Kemper v. Louisville, 14 Bush., 87; Seeley v. Alden, 61 Penn. St., 302; Troy v. Railway, 23 N. H., 102; 55 Am. Dec., 177; Fowler v. Railway, 112 Mass., 338.

FINLEY, Associate Justice.—Appellee's counsel accept the statement of the case made by appellant's counsel in their brief, with a short additional statement made in their brief.    We give the statement of appellant, with the additional statement of appellee.

This suit was instituted by J. P. Hopson on December 21, 1893, in the District Court of Grayson County, against the Missouri, Kansas and Texas Railway Company of Texas, to recover damages in the sum of $2500 for depreciation in the value of his home in the city of Sherman by the construction and operation of defendant's tracks, turntable, etc., in Branch street, upon which his property abutted, and upon property belonging to defendant situated upon the opposite side of the street.    It was alleged that his ingress and egress to his property by way of Branch street had been cut off and destroyed; that by the operation of engines and cars upon the tracks there was created great noise which disturbed the quiet of his home and endangered his property to loss by fire.    That cars were left standing upon the track, obstructing his view, blockading the street, and that the structures complained of were unsightly and disfigured the locality, and that plaintiff's life and the lives of his family were endangered by the operation of the cars.

Defendant answered by general demurrer and general denial.    Defendant also answered by a special plea, alleging that its road was constructed along Branch street in the summer of 1890, in accordance with the permission granted by ordinance of the city council of the city of Sherman, and in pursuance of a contract with the city and the citizens thereof who undertook to secure the building of the road into the city by furnishing the right of way and depot grounds, by whose arrangement plaintiff, on February 28, 1890, had executed in writing, for a valuable consideration, his release of all damages to be caused to him as owner of the property in question by the building and operating of the railroad upon Branch street, as provided for in the contract entered into for its construction.    This contract, it was alleged, was for the location and construction of the railway upon Branch street, with all necessary, proper and desirable sidings, turnouts and switches, and the constructions complained of were all necessary, proper and desirable appurtenances to the construction and operation of said railway, and within the contemplation of the contracting parties as a part of the structures appurtenant to said railway, damages for which were released by the plaintiff's said contract.    Defendant also pleaded the statute of limitation of two years in bar of plaintiff's claim.

By first supplemental petition, filed April 15, 1895, plaintiff replied, demurring to and denying the allegations in the defendant's answer, and pleading in avoidance by admitting the execution of the contract set up in the answer, averring that by the ordinance of the city and the contract for the construction of the road, on the faith of which plaintiff's release was executed, it was provided that the railway, turnouts, switches, etc., should be so constructed as to conform to the grade of Branch street as then or afterward established, and so con-

structed and maintained as not to unnecessarily interfere with the use of said street by the public, and be commenced within sixty days and be completed and put in operation within six months to the south boundary line of the city, and that a condition of the grant of right of way was that no sidings were to be put in and used, except for the transaction of business of said railroad in the city of Sherman, and no turnouts, sidings, switches or tracks were to be built for the purpose of parking cars. Plaintiff alleged default by defendant in the time of construction and failure to construct in accordance with the grade of the streets, unnecessary interference with the use of the streets, using the track for parking cars in front of plaintiff's residence so as to blockade the street, etc., and attached as exhibits to the answer the ordinances and contracts referred to in the pleading.

The case was tried September 17, 1895, and resulted in a verdict in favor of plaintiff for the sum of $400, for which he had judgment. From this judgment the railway company appeals.

It was proven on the trial that plaintiff, prior to the construction of the line of railway in question, was the owner of the real property described in his petition, consisting of a lot in the city of Sherman on the corner of Branch and Cherry streets, public streets of said city, and abutting on the former street for the distance of seventy-nine feet. The Sherman, Denison and Dallas Railway was constructed into the city of Sherman some time in the fall of 1890, its main line being laid in Branch street, and its depot and depot grounds being situated two blocks north of plaintiff's property, which property he still owned and resided on up to the time of the trial. Before the railroad was built, a contract was made by certain citizens of Sherman, as an executive committee acting on behalf of the citizens subscribing in aid of the construction of the road, with Messrs. Waldo & McDonald and their associates, the promoters of the road. By this contract the citizens agreed to furnish the right of way and depot grounds in the city for the proposed road through the city limits, and to secure the releases of the abutting property owners on Branch street from damages to be occasioned by the construction of the road, which it was contemplated should be furnished with a right of way through the city on that street, or to indemnify the promoters and owners of the road against damages claimed by such parties. It was provided, however, by such contract, that the damages so to be released or secured against should not include any damages occasioned by fire or other negligence of said railroad, but extend only to the damages occasioned to such property by the proper construction and operation of said railroad. The promoters agreed, in consideration of the undertakings of the citizens, to construct such road, and to complete it through the city to its south boundary by the first of January, 1891.

The fourth article of the agreement provided that the citizens' committee undertook "to secure the right of way for the railroad from the corporate limits of said city of Sherman along and over Branch

street and Everglade street (which was an extension of Branch street) and across intersecting streets from the north to the south line of said city and the Texas and Pacific Railway, with necessary and desirable turnouts and sidings, but no sidings are to be put in and used except for the transaction of the business of said railroad in the said city of Sherman, nor for the purpose of parking cars."

The city of Sherman, through its common council, in furtherance of the undertaking, granted a right of way for the road along Branch and Everglade streets, and across intersecting streets from the north to the south boundary of the city, to be used in the construction of a steam railway and turnouts and switches necessary and desirable to the use, maintenance and operation of said railroad; provided that said railway, turnouts and switches shall be so constructed as to conform to and shall be used and maintained in conformity with the grade of said Branch street and Everglade street, as established now or hereafter by the city, and provided further that the said railway, turnouts and switches shall be constructed, used and maintained so as not to unnecessarily interfere with the use of said streets by the public, and said railway shall be constructed within eighteen months along said street.

On February 28, 1890, plaintiff executed the following release of damages: "Know all men by these presents, that I, J. P. Hopson, in consideration of two hundred dollars to be paid by April 15, 1890, and the further consideration of the building and operating of a railroad from Denison to the city of Sherman, by J. Waldo and B. P. McDonald and associates, as per contract entered into by and between the executive committee appointed by the subscribers to said railroad and said J. Waldo and B. P. McDonald, and their associates, dated Feb. 21, 1890, do hereby agree to waive and do waive and release to and in favor of said J. Waldo and B. P. McDonald and their associates, their successors and assigns and any railway company and its receivers operating said railway, any and all claims for damages which may arise or accrue to J. P. Hopson as present or future owner or proprietor of any property or business situated or carried on in said city of Sherman, caused by the building and operating of said railroad into or through the city of Sherman on Branch and Everglade streets, as contemplated and provided for in and by said contract; said damages not to include any damages occasioned by fire or other negligence of said railroad, but to extend only to the damages accruing to said property or business by the proper construction and operation of said railroad."

The $200 referred to was duly paid to plaintiff by the citizens' committee. Waldo and McDonald transferred the railroad and their rights acquired under the contract with plaintiff to the Missouri, Kansas and Texas Railway Company, and that company, by authority of the Act of the Legislature of Texas, approved April 16, 1891 (Special Laws, 1891, p. 120, et seq.), transferred the railway and all their rights to defendant Missouri, Kansas and Texas Railway Company of Texas.

W. T. Wilson, a witness for the plaintiff, testified that he talked

with plaintiff about getting his release of damages, and acquainted him with the provision of the contract. Did not say anything about parking cars in the street, but told him the citizens had purchased 22 acres of land out by Kerr's nursery which was to be used for parking cars.

Plaintiff testified in detail about the construction and operation of the road. The substance of his testimony was, that the street had been cut down below the natural surface for the purpose of laying the track, interfering with its use, until afterward the city graded the remainder of the street down about two feet, to the level of the track. That the track had been used for the purpose of making up trains and switching backward and forward. That cars had been left standing on the track opposite his premises, and cars parked on the main line by his house. That about five months before suit was brought, a turntable was constructed on property upon the opposite side of the street. That access to his lot had been interfered with by the track and by the standing of cars upon the track, and the street at times was blockaded by the standing of cars upon the switch, so that there was no thoroughfare, except by passing across the adjoining lot. That his property had been depreciated in value since they commenced to park cars there, in the sum of $1500, and that the turntable was in constant use, and affected the value of his property. There was but one track immediately opposite plaintiff's premises, but just north of there the side track on the west side of the main track and located in Branch street was situated, and further north there was a spur leading into the turntable on the opposite side of the street. He did not know that the construction of the side track in the street north of him had anything to do with the frequency of their parking cars. Its effect might have been to reduce the number of cars that were moved by his house or that stood opposite his house. The side track was used for the purpose of making up trains. He supposed its effect would be to reduce the use of the main track for making up trains and switching cars. It was an unusual thing to see any switching done down by his house since they put in the side track, but nevertheless they did it. They did it lots of times since the side track was put in and since the turntable was put in. Were not doing it as much now as they were a while ago, but they were doing some. The mayor got after them about it, about keeping cars standing there. The turntable was put in the same year the suit was filed.

Both parties consented that the jury should be permitted to examine the premises in question, which were situated a few blocks from where the trial was going on. In pursuance of this agreement, at the conclusion of plaintiff's testimony, the court having adjourned until next morning, the jury, under charge of the sheriff, were permitted to make a personal examination of the premises, make measurements, etc., and did so.

Maurice Green, agent for defendant at Sherman, testified that cars had been occasionally permitted to stand on the main line about plaintiff's premises previous to the time that complaint was made by the

mayor in regard to this, but since that time witness had paid particular attention to this matter, and had not permitted any cars to be stored or left on this part of the line.  Cars had sometimes, since this date, been switched or moved past plaintiff's premises, and had stood there for a few minutes at a time while being switched, but no cars had been permitted to be stood there or stored there.  Prior to the construction of the side track and other extensions of the 'track, cars had sometimes been left standing on the track in the vicinity of plaintiff's premises. The effect of the additional construction of side tracks and switches was to provide better facilities for switching and handling cars and storing them in defendant's yards, and to decrease the use of the main line opposite plaintiff's premises.

Additional statement of appellee:  Appellee testified;—They had a negro boarding car there for awhile; three or four cars there, and slept, ate and cooked there; this was right in front of my house; they threw the slop around generally; the boarding outfit was there something like a week; there were plenty of other kinds of cars there; there were cars there last night and the night before; show cars were loaded on it and stood there all night long; the circus stood there night before last; they left cars there after shipping cattle in them; could not state how long they stood there; see them there frequently; it was a common occurrence—it was an everyday business; did not suppose they would stay there at any one time more than a day at a time; they were moving them around checking off trains and others coming in.

The boarding car was there about a week while they were making the switch connecting this road with the Cotton Belt, getting to the oil mill, parking these cars; trains switching and making up trains affected the value of plaintiff's property; it blocked your sight and view; you cannot get around there at all; since the city had completed the grading there was not a passway big enough for a wagon between plaintiff's sidewalk and the track; the way they left it there was not room enough for anything; it stood in that condition for about two years; witness has no way to make a sidewalk in front of his premises; if he were to make one there would not be room enough for a wagon between it and the railroad; when cars were on the switch north of plaintiff's place wagons could not pass that way without turning out on Phillips' lot north of him.

*Opinion.*—The first assignment of error complains at this portion of the charge of the court: "If you believe from the evidence that defendant constructed a siding or sidings in Branch street and Everglade street, for the purpose of parking cars, or if you believe from the evidence that the defendant used its track or sidings on said street in parking cars thereon, and further believe from the evidence that said use of its said track or sidings on said streets in parking cars was an improper operation of said railroad, then if you further believe from the evidence that the construction of such sidings for the purpose of parking cars, or

the said use of said track or sidings for the purpose of parking cars, or both together, caused a permanent decrease in the value of plaintiff's home place on said Branch street, you will find for plaintiff and assess his damages as hereinafter directed, unless you find for the defendant on its plea of the statute of limitations of two years, under the instruction hereinafter given you concerning said plea of limitations. The burden of proof is upon plaintiff to establish by a preponderance of the evidence, that is by the greater weight and credit of the testimony, the facts that would entitle him to recover as set forth in this paragraph, otherwise your verdict should be for the defendant."

It is urged that plaintiff had, for a valuable consideration, released all damages occasioned by laying the track, with sidetracks and turnouts, in Branch street, and that the court charged the jury that this release covered all damages arising from a proper construction and operation of the road; and it is insisted that this charge was solely directed to the issue of a recovery for the unlawful operation of the road. Upon this issue the appellant asked of the court the following special charge:

"Plaintiff seeks to recover for depreciation in the value of real property alleged to have been caused by the construction of a sidetrack in Branch street and a turntable. The fact, if it be a fact, that the railway track was used for parking cars or standing cars thereon in front of plaintiff's premises, might, if improperly or wrongfully done, entitle plaintiff to damages in a proper form of action, but would not entitle him to recover for the injury or inconvenience so occasioned in an action for depreciation in the value of his real estate. It is only for such effect in depreciating the value of plaintiff's property, if any, as may have been caused by the construction of the structures complained of, and unless such construction necessitated or occasioned the parking of cars on the track complained of, and will in the future continue to necessarily occasion the same, you cannot consider such parking of cars as an element of damages in this case."

An inspection of the pleadings of plaintiff discloses that the purpose and object of the suit is to recover damages for a depreciation in the value of his property situated on Branch street. The measure of damages which the court gave to the jury was the depreciation in value of the property, to be ascertained by finding the difference between the value of the property just before and just after the acts complained of. In this character of suit a recovery could not be had on account of occasional and repeated unlawful acts of the railway company in the operation of the road,—such as leaving cars standing upon the track in front of plaintiff's property for an unreasonable and improper length of time, creating annoyance, inconvenience, and even a nuisance. Such acts may constitute a cause of action authorizing the recovery of damages; but they would not entitle the plaintiff to recover damages upon the basis of permanent depreciation of the value of his property.

The only issues properly raised by the pleadings and evidence in this case, were those of the improper construction of the railway track or

tracks,—such construction. as was not contemplated and covered by the deed of release and the contracts referred to therein; and the amount of damages produced thereby.

If the constructions, consisting of the main track, side track, etc., which were shown to have been made in this case, were covered by the deed of plaintiff, then he was not entitled to a verdict for damages in a suit as brought by him. That is to say, if the constructions made by the railway company were necessary and proper for such operation of the railroad as was intended and provided for by the contract of the parties, and were not made in a negligent and improper manner, and came within the character of constructions contemplated by the deed of release, then defendant would not be liable in this suit for damages on account of permanent depreciation in the value of plaintiff's property.

The special charge requested should not have been given. The first paragraph of the charge states the law correctly; but that portion of the special charge which stated that "unless such construction necessitated or occasioned the parking of cars on the track complained of, and will in the future continue to necessarily occasion the same, you cannot consider such parking of cars as an element of damages in this case," was erroneous.

If the constructions were not necessary or proper for such operation of the road in the city of Sherman as was contemplated by the deed of release, and the contracts with which it stood connected, then the plaintiff would be entitled to recover the permanent damage which such construction occasioned to his property, without regard to whether the construction "necessitated or occasioned" such uses of the tracks as are here complained of. Railway v. Haskell, 4 Texas Civ. App., 557; Clark v. Dyer, 81 Texas, 342; Railway v. Hepner, 83 Texas, 141; Railway v. Seymour, 63 Texas, 346; Railway v. Tait, 63 Texas, 226; Railway v. Anderson, 79 Texas, 427; Railway v. Bingham (Tenn.), 38 Am. and Eng. R. R. Cas., 450 (11 S. W. Rep., 705); Harmon v. Railway, 11 S. W. Rep., 703; Railway v. Heisel, 31 Am. Rep., 313; Railway v. Eberle, 110 Ind., 542; Uline v. Railway, 101 N. Y., 98; 23 Am. and Eng. R. R. Cas., 9, 22, and authorities there reviewed; Adams v. Railway, 18 Minn., 260; Blesch v. Railway, 43 Wis., 183; Scott v. Railway (Ind.), 10 Am. and Eng. R. R. Cas., 189; 1 Suth. on Damages, 199.

The other assignments of error relate to the same phase of the case, and need not be discussed.

Upon another trial of the case the issues to which the investigation should point and be confined, should be the question of whether there was a construction by the railway company not contemplated by the contract of release, and the damages which legitimately flow from such unauthorized construction, if there was such.

The judgment of the court below is reversed and the cause remanded.

*Reversed and remanded.*