Roberta Raymond was convicted of the unlawful possession of intoxicating liquor, and she appeals. Affirmed.

James T. Casey and Sam B. Hall, both of Marshall, for appellant.

Sam D. Stinson, State's Atty., of Austin, and Robt. M. Lyles, Asst. State's Atty., of Groesbeck, for the State.

MORROW, P. J. The conviction is for the unlawful possession of intoxicating liquor; punishment fixed at confinement in the penitentiary for a period of two years.

From the state's evidence, officers, acting under a search warrant, searched the dwelling of the appellant and found therein a quantity of whisky.

[1] Bill No. 1 reflects the action of the court in declining to entertain the preliminary motion to suppress the testimony of Henderson, Gilstrap, and Ezell upon the ground that the facts within their knowledge were obtained through the search of a private dwelling without a search warrant. The bill fails to show the evidence adduced or that the averments in the motion were ascertained by the trial court to be true, nor does it show what evidence the state expected from the witnesses named. In these particulars the bill is incomplete even if the procedure was proper. Upon the latter point, however, the rule prevailing in this state does not sanction the procedure attempted. If the averments in the bill were true, the appellant's rights would be fully protected by objection to the evidence when it was offered. See Foster v. State, 104 Tex. Cr. R. 121, 282 S. W. 600.

[2] Bill No. 2 complains of the refusal of the court to read to the jury a special charge instructing them that in order to convict the accused it was essential that the state have evidence in addition to that showing that the appellant possessed a quantity of whisky beyond a quart. In the main charge the court gave an instruction embracing the substance of the definition of "prima facie evidence" such as is contained in the case of Floeck v. State, 34 Tex. Cr. R. 314, 30 S. W. 794. Where the possession of intoxicating liquor in an amount beyond a quart is proved, a prima facie case of possession for the purpose of sale is made out. Such is the statute, chapter 22, Acts 38th Leg. 2d Called Sess. Such proof is sufficient to overcome the presumption of innocence and to support a verdict of guilty. See Newton v. State, 98 Tex. Cr. R. 582, 267 S. W. 272; Stoneham v. State, 99 Tex. Cr. R. 54, 268 S. W. 156, and authorities collated.

Bill No. 3 complains of the refusal of a special charge upon the same subject as that covered in bill of exceptions No. 2.

[3] Bill No. 4 complains of the refusal of a special charge explaining to the jury the effect of the term, "prima facie evidence." The special charge is in substance embraced in the main charge. With reference to both bills Nos. 2 and 3, we will add that in neither is it shown that it was presented to the trial court before the argument began. See articles 658, 659, and 660, C. C. P. 1925; old Code, articles 735, 737, and 737a; Vernon's Tex. Crim. Stat. 1916, vol. 2, p. 525, note 63.

Finding no error in the record, the judgment is affirmed.

---

## TYRRELL–COMBEST REALTY CO. v. ADAMS. (No. 1448.)

(Court of Civil Appeals of Texas. Beaumont. Feb. 3, 1927. Rehearing Denied Feb. 16, 1927.)

1. Contracts ⊂═322(2)—In action to recover for drilling water wells, testimony of nonexperts that water was good for drinking and domestic purposes, as required by contract, held inadmissible.

In action to recover for drilling water wells under contract which provided water produced should be "good drinking water, suitable for all domestic and household purposes," admitting testimony of nonexpert witnesses, who drank water drilled, and washed their faces and hands and clothes with water, that it was good for drinking and suitable for domestic purposes, held error; question of suitability of water for drinking purposes being for determination of experts qualified to testify as to effect of constant use on human system over considerable length of time.

2. Evidence ⊂═501(1)—Before receiving nonexpert's opinion, facts must be shown enabling him to give intelligent opinion.

Nonexpert witnesses, when allowed to give opinions, must give facts on which opinions are based, which facts must be such as to render them able to arrive at intelligent opinion with respect to matter in question.

3. Evidence ⊂═536—Witnesses could not qualify as experts on fitness of water for drinking or domestic purposes by casual use for drinking and washing.

In action for drilling water wells, where water produced was required by contract to be good drinking water, suitable for domestic purposes, witnesses could not qualify as experts on quality of water by mere casual drinking thereof, or using it for washing, where use for such purposes did not continue for any appreciable length of time; whether water was good for drinking being especially question for scientific determination.

4. Evidence ⊂═555 — Testimony as to water used in vicinity held incompetent to prove well water was good for drinking, in absence of analysis.

Where question arose, in action to recover for drilling water wells, as to whether water was good for drinking and domestic purposes,

as required by contract, testimony as to water used in vicinity and its comparison with water in controversy *held* incompetent, where water sought to be compared was not shown to have been from wells of like depth, or to contain like ingredients; no analysis of waters being shown.

Appeal from District Court, Jefferson County; Geo. C. O'Brien, Judge.

. Action by J. D. Adams against the Tyrrell-Combest Realty Company, in which defendant interposed a cross-action. Judgment for plaintiff and order overruling a motion for a new trial, and defendant appeals. Reversed and remanded.

Crook, Lefler, Cunningham & Murphy, of Beaumont, for appellant.

Howth, Adams & Hart, of Beaumont, for appellee.

O'QUINN, J. Appellee sued appellant to recover $3,000, alleged to be due him under a written contract for the boring of certain water wells. Appellant answered by general denial, and specially that appellee failed to comply with the terms of the contract, which obligated him to drill a well or wells that would furnish 4,000 barrels of water every 24 hours, good for drinking, and suitable for all domestic and household purposes. Appellant also, by cross-action, sought judgment against appellee for $1,284.59, for money paid for labor and materials furnished at the request of appellee.

The case was tried to a jury upon special issues, upon their answers to which judgment was rendered for appellee in the sum of $1,715.14. This because by agreement of the parties that appellant had advanced to appellee the sum of $1,284.59 in the form of certain materials and labor, which, being deducted from the amount sued for, $3,000, left the sum for which judgment was given.

Motion for a new trial was overruled, and the case is before us for review on appeal.

The controlling question is whether appellee complied with the following clause in the contract:

(a) "To drill in sufficient number, not to exceed eight, well or wells on blocks twenty-five (25), forty-two (42) and forty-four (44), as directed by second party sufficient to produce every twenty-four hours consecutively for ten (10) days four thousand (4,000) barrels of good drinking water, suitable for all domestic and household purposes."

The evidence showed that two wells were bored, and the jury found that they furnished the quantity of water called for, and that the water was good drinking water, suitable for all domestic and household purposes. The contest in the main is whether the water was of the quality contracted for—"good drinking water, suitable for all domestic and household purposes." Appellant contended that the water produced was not good for drinking, nor suitable for all domestic and household purposes, because it contained too high a percentage of salt. It was shown by several expert witnesses—chemists who had made chemical analysis of the water—that it contained from 105 of 124 grains of salt to the gallon, and that such water was not good for either drinking or domestic purposes.

. [1] In attempting to show that the water was "good drinking water," and was "suitable for all domestic and household purposes," appellee offered the testimony of several nonexpert witnesses, and himself testified, that they drank the water and washed their faces and hands and their clothes in the water, and that it lathered with soap all right, and that it was good for drinking, and suitable for all domestic purposes. All of this testimony was objected to by appellant, on the ground that none of the witnesses so testifying had qualified as experts to testify as to the quality of the water, nor as to its effect on the human system, when drank regularly, nor whether water containing the percentage of salt shown was fit for domestic and household purposes, and, further, that the question at issue was a scientific one that could be determined only by expert witnesses duly qualified to testify as to the contents of the water and the effect a constant use of same would have on the human system when used for a considerable length of time, and as to the effect it would have on machinery and other things when used for domestic and household purposes—all of which objections were overruled, and the testimony allowed to go to the jury. Appellant duly preserved bills of exception to the evidence and its admission, and this is the determining question in the case.

[2, 3] We think the court erred in admitting the testimony. If a witness had used the water for a long time as drinking water, or for the generation of steam, he could speak from actual experience as to its effect in either instance, but a casual use for only a very brief duration would not qualify him to give his opinion as to its suitableness for the purposes named. Whether water is contaminated with impurities, or contains ingredients rendering it hurtful, and maybe dangerous to the human system, and unfit for domestic use, if used continuously, is a matter for scientific investigation and analysis, and cannot be correctly determined other than by such scientific investigation as will disclose its elements and their effect when used for the purposes in question, or by such continued use as will demonstrate its safe and suitable adaptability to same, or the contrary. The matter here in controversy is not one where the truth must ultimately rest in inference, but is one susceptible of exact determination by scientific analysis. Nonexpert witnesses, when allowed to give their opinions, must give the facts upon which their opinions are based, and these facts must be such as to render them able to arrive at an intelligent opinion with respect to the matter

about which they testified. Gulf, C. & S. F. R. Co. v. Hepner, 83 Tex. 136, 140, 18 S. W. 441; Gulf, C. & S. F. R. Co. v. Richards, 83 Tex. 203, 206, 18 S. W. 611; Rogers v. Crain, 30 Tex. 284, 290; Elliott v. Ferguson, 37 Tex. Civ. App. 40, 83 S. W. 59; 2 Jones on Evidence, §§ 366, 367; 11 R. C. L. p. 34, § 33; 22 C. J. p. 498, § 594. The facts given by appellee's witnesses, upon which they based their opinions as to the quality of water, showed no such use of the water as to make them able to correctly form an opinion as to the usability of the water for any of the purposes in question. The mere casual drinking of the water, or the washing of one's face and hands or clothes, the uses not continuing for any appreciable length of time, will not qualify one to testify by giving his opinion as to the fitness of the water for the purposes named, and especially is this true as to whether the water is "good for drinking."

It has been held: That in an action involving the question of whether certain beer was intoxicating, a witness who was experienced in the manufacture and taste of beer, could not testify as to the amount of alcohol in the beer by tasting same. Commonwealth v. Collier, 134 Mass. 203. That in an action for polluting a stream a nonexpert witness could not give his opinion as to whether the alleged pollution made the premises involved unhealthy or uninhabitable. Stennett v. City of Bessemer, 154 Ala. 637, 45 So. 890. That a nonexpert witness could not testify that smoke coming from a certain chimney was not of such character as to be dangerous to the health, life, and property of persons living in the vicinity, or to the public at large, or that the smoke did not constitute a public nuisance. Moses v. United States, 16 App. D. C. 428, 50 L. R. A. 532. That the power of resistance of iron of a given dimension and fiber is a scientific question, about which the average person has no information—a subject calling for expert testimony. Fraternal Construction Co. v. Foundry & Machine Co. (Ky.) 89 S. W. 265.

In Commonwealth v. Schaffner, 146 Mass. 512, 16 N. E. 280, the defendant was charged with selling impure milk (alleged to contain "annato," a coloring matter injurious to health). A milk inspector was not allowed to testify as to whether the milk was injurious to health, but it was held that the question called for scientific analysis by an expert chemist. In Rogers v. Crain, 30 Tex. 284, a nonexpert witness was not permitted to state whether from all appearances a person was suffering from a disease chronic in its nature.

[4] The testimony offered by appellee as to the water in use in the vicinity and its comparison with the water in controversy was not competent. It was not shown to have been from wells of like depth or stratas of water sand, as the water in question, nor that it contained like ingredients. No analysis of the waters sought to be given in comparison were shown, nor anything other than that they were in the vicinity, and that they were being used. This was not sufficient to render the evidence admissible.

Because the court erred in admitting the evidence complained of, and because the verdict and judgment are without competent evidence to support same, the judgment is reversed and the cause remanded.